UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREGORY LEE #791018,

   Plaintiff,          Hon. Janet T. Neff

v.                 Case No. 1:17-cv-474

UNKNOWN WAGNER, et al.,

   Defendants.

_____/

## REPORT AND RECOMMENDATION

   This matter is before the Court on Defendant's Motion for Summary Judgment. (ECF No. 9). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendant's motion be **granted** and this matter **terminated**.

## BACKGROUND

   The following allegations are contained in Plaintiff's complaint. (ECF No. 1). On February 8, 2016, Plaintiff was convicted of a misconduct charge and escorted to segregation by Sergeant Wagner. On the way to segregation, Plaintiff asked Wagner if he "was still holding a grudge" regarding a previous incident involving the two. Wagner indicated that he was, in fact, still holding a grudge. Plaintiff responded by telling Wagner that his previous actions had been retaliatory to which Wagner responded, "you shouldn't file lawsuits."

   After being placed in segregation, Plaintiff "attempted to commit suicide," immediately after which he was placed in a "close observation" cell. This particular cell did not contain a mattress.

-1-

When Plaintiff asked Sergeant Wagner why his cell did not contain a mattress, Wagner responded, "you know why." When Plaintiff repeated his question, Wagner responded, "I'm entitled to my opinion of you, just as you are in your lawsuit with Tingrella." When Plaintiff told Wagner that his actions constituted retaliation, Wagner told Plaintiff to "file another lawsuit."

Plaintiff later asked Sergeant Harrison how long his mattress restriction would remain in effect, to which Harrison responded that "there is no restriction just food loaf." However, when Plaintiff then requested a mattress, Sergeant Wagner interjected that Plaintiff was, in fact, on mattress restriction. Over the course of the next several days, Plaintiff spoke with four other prison officials in an attempt to determine whether he was subject to a legitimate mattress restriction. These individuals were not aware of any mattress restriction, but nevertheless informed Plaintiff that they were instructed to not provide him with a mattress. On February 16, 2016, Plaintiff was released from the "close observation" cell and "placed in a regular cell with a mattress."

Plaintiff initiated the present action against Sergeant Wagner and five other prison officials alleging that depriving him of a mattress for eight days violated his Eighth Amendment right to be free from cruel and unusual punishment. Plaintiff also alleged that Sergeant Wagner "confiscated Plaintiff's mattress in retaliation for Plaintiff filing lawsuits on his co-workers." Plaintiff's Eighth Amendment claims were dismissed on screening for failing to state a claim. (ECF No. 4). Defendant Wagner now moves for summary judgment on the ground that Plaintiff has not properly exhausted his administrative remedies.

## **SUMMARY JUDGMENT STANDARD**

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).

While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation,

-3-

'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561. Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

**I.      Exhaustion**

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies. See Porter v. Nussle, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. See Jones v. Bock, 549 U.S. 199, 216 (2007). Instead, failure to

exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing. *Id.* With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

Michigan Department of Corrections Policy Directive 03.02.130 articulates the applicable grievance procedures for prisoners in MDOC custody. Prior to submitting a grievance, a prisoner is required to "attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue falls within the jurisdiction of the Internal Affairs Division in Operations Support Administration." Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ P. If this attempt is unsuccessful (or such is inapplicable), the prisoner may submit a Step I grievance. *Id.* The Step I grievance must be submitted within five business days after attempting to resolve the matter with staff. *Id.* at ¶ V. The issues asserted in a grievance "should be stated briefly but concisely" and the "[d]ates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R.

If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was

received, within ten business days after the response was due. *Id.* at ¶ BB. If the prisoner is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal the matter to Step III. *Id.* at ¶ FF. The Step III grievance must be submitted within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.*

In support of his motion, Defendant Wagner has presented evidence that while Plaintiff submitted a grievance regarding the incident in question, the grievance was rejected as untimely at all three steps of the grievance process. (ECF No. 10-3 at PageID.146-50). Plaintiff does not dispute this or assert that he submitted any other grievance regarding the matter in question. Instead, Plaintiff argues that his grievance was, in fact, timely filed. The Court disagrees.

As noted above, MDOC policy regarding the timeliness of prisoner grievances provides that prior to filing a grievance, a prisoner must, within two days of becoming aware that there exists a grievable issue, attempt to resolve the matter with staff. If this proves unsuccessful, the prisoner must file his grievance within five business days. Plaintiff was housed without a mattress from February 8, 2016, through February 16, 2016. However, Plaintiff did not file his Step I grievance until March 7, 2016. Plaintiff's arguments as to why the Court should ignore the obvious untimeliness of his grievance are not persuasive.

First, Plaintiff argues that he could not file a grievance during the time he was housed in the observation cell because during such time he was denied grievance forms and writing utensils. Even if this is assumed to be accurate, by Plaintiff's own admission he was released from the observation cell on February 16, 2016, and returned to a "regular cell." There is neither evidence nor allegation that Plaintiff was denied grievance forms or writing utensils upon his return to a "regular

-6-

cell." Plaintiff nevertheless waited twenty (20) days to file his Step I grievance. Plaintiff justifies this additional delay on the ground that it was not until March 7, 2016, that Defendant Wagner acknowledged that he had not, in fact, been subject to a legitimate mattress restriction during his placement in the observation cell. While this may be accurate, it is not particularly relevant, as Plaintiff's own allegations make clear that he was aware of a grievable issue regarding the deprivation of his mattress no later than February 16, 2016.

As discussed above, Plaintiff alleges in his complaint that when he asked Wagner, on February 8, 2016, why his cell did not contain a mattress, Wagner did not indicate that Plaintiff was subject to a legitimate mattress restriction, but instead stated, "you know why." According to Plaintiff, when he repeated his question, Wagner responded, "I'm entitled to my opinion of you, just as you are in your lawsuit with Tingrella." When Plaintiff told Wagner that his actions constituted retaliation, Wagner told Plaintiff to "file another lawsuit." Thus, by Plaintiff's own admission, he considered, as of February 8, 2016, his mattress deprivation to be a retaliatory act by Defendant Wagner in response to a lawsuit Plaintiff filed against another prison official.

Moreover, Plaintiff alleges in his complaint that while he was housed in the observation cell, he asked several prison officials whether he was subject to an official mattress restriction. None of these individuals were aware of any such mattress restriction, but nevertheless informed Plaintiff that they had been instructed to not provide him with a mattress. In response to the present motion, Plaintiff asserts that on February 16, 2016, he was informed by the Housing Unit Officer that "there was no [mattress] restriction form in Plaintiff's paperwork." (ECF No. 14 at PageID.213). As Plaintiff concedes, he was aware, no later than February 16, 2016, that there existed "a valid issue about the mattress." (ECF No. 14 at PageID.212-13).

Implicit in Plaintiff's argument is that he had to negate any possible defense to a claim of retaliation, before he could file a grievance. This argument is not particularly persuasive, however. It would be a different matter, and Plaintiff's argument more persuasive, if Plaintiff's claim of retaliation was based upon speculation. As discussed above, however, Plaintiff's claim of retaliation is premised upon statements made to him by various prison officials, including Defendant Wagner who, according to Plaintiff, all but conceded to Plaintiff that he was being deprived of a mattress for improper reasons. Moreover, while Plaintiff arguably needed to attempt to resolve the issue with Defendant Wagner before submitting his grievance, Plaintiff alleges that he did so, without success, on February 16, 2016. Plaintiff has failed to articulate a legitimate or reasonable basis for nevertheless waiting three weeks to initiate his grievance.

In sum, the Court discerns nothing improper in the decision to reject Plaintiff's grievance as untimely filed. This determination was consistent with the facts alleged by Plaintiff and the relevant MDOC Policy Directives. Accordingly, the undersigned recommends that Defendant Wagner's motion for summary judgment be granted.

## II.        Failure to State a Claim

In the alternative, the undersigned recommends that Plaintiff's remaining claim of retaliation be dismissed for failure to state a claim. Because Plaintiff is proceeding in this matter as a pauper, his claims are subject to dismissal if such are frivolous, malicious, or fail to state a claim upon which relief can be granted. *See* 28 U.S.C. § 1915(e)(2) ("the court *shall* dismiss the case at any time if the court determines that. . .the action or appeal. . .fails to state a claim on which relief may be granted") (emphasis added).

The elements of a First Amendment retaliation claim are well known: (1) Plaintiff was engaged in constitutionally protected conduct, (2) Plaintiff suffered adverse action which would deter a person of "ordinary firmness" from continuing to engage in such protected conduct, and (3) there exists a causal connection between the protected conduct and the adverse action - in other words, the adverse action was motivated at least in part by Plaintiff's protected conduct. *See Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)).

As the Court previously concluded, in dismissing Plaintiff's Eighth Amendment claims, the deprivation in question was of little significance. As the Court stated:

> The deprivation was relatively short; it followed two of the common precipitating events (sexual misconduct and suicide attempt); there is nothing to suggest that Plaintiff was particularly susceptible to injury from mattress deprivation; based on his allegations, Plaintiff did not even suffer pain until the period of restriction was over; and his injury, if any, was not serious; he did not seek treatment for weeks and the treatment consisted of ibuprofen and exercise.

(ECF No. 4 at PageID.101).

Plaintiff's retaliation claim fails at step two as the deprivation of a mattress for eight days, at least under the present circumstances, is not sufficiently adverse to deter a person of ordinary firmness from engaging in constitutionally protected conduct. *See Branch v. Bauman*, 2014 WL 413512 at *4 (W.D. Mich., Feb. 4, 2014) (seven day mattress deprivation "not sufficiently adverse to deter a person of ordinary firmness from engaging in protected conduct"). Accordingly, the undersigned recommends, in the alternative, that Plaintiff's remaining claim of retaliation against Defendant Wagner be dismissed for failure to state a claim.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that Defendant's Motion for Summary Judgment, (ECF No. 9), be **granted** and this matter **terminated**. The

undersigned further recommends that, in the alternative, Plaintiff's remaining claim of retaliation against Defendant Wagner be dismissed for failure to state a claim.  The undersigned further recommends that appeal of this matter would not be taken in good faith.  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997); 28 U.S.C. § 1915(a)(3).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Dated: January 2, 2018                               /s/ Ellen S. Carmody
ELLEN S. CARMODY
U.S. Magistrate Judge